STATE OF MISSOURI, TO THE USE OF M. D. LEWIS, Plaintiff in Error, *v.* CHARLES SCHLEIFFARTH ET AL., Defendants in Error..

### January 18, 1881.

That, after a sale of realty to pay the debts of the estate, the administrator, out of the proceeds of such sale, first pays an encumbrance on the realty sold, is not necessarily such malconduct as will authorize an action on his bond, where he acts in good faith and under the direction of the court.

.ERROR to the St. Louis Circuit Court, WICKHAM, J. *Affirmed.*

W. L. SCOTT, for the plaintiff in error: Probate Courts have no jurisdiction except as conferred by statute. — *Powers* v. *Blakey*, 16 Mo. 437 ; *The State* v. *St. Louis*, 38 Mo. 402. The court could only authorize the sale of the equity of redemption. — *Welton* v. *Hull*, 50 Mo. 297 ; *Jackson* v. *Magruder*, 51 Mo. 55. Demand must be made. — *Spaulding* v. *Suss*, 4 Mo. App. 541.

J. M. & C. H. KRUM, for the defendants in error, cited : *Strong* v. *Wilkerson*, 14 Mo. 116 ; *In re Biddle*, 35 Mo. 29 ; *Clyce* v. *Anderson*, 49 Mo. 37 ; *In re Davis*, 62 Mo. 450.

H. A. & A. C. CLOVER, for the defendants in error : The judgment of a competent tribunal, having jurisdiction to determine the question and having jurisdiction over the parties, cannot be revised in this manner, as now attempted by the plaintiff in this proceeding. — *Johnson* v. *Beazly*, 65 Mo. 259 ; *Brooks* v. *Duckworth*, 29 Mo. 49. The discharge of the encumbrance by the administrator was proper. — *Welton* v. *Hull*, 50 Mo. 297.

BAKEWELL, J., delivered the opinion of the court.

This is an action against the sureties on the bond of an administrator, to recover for the alleged waste of the estate. The cause was tried by the court, a jury being waived, and the finding and judgment were for defendants. There is no controversy as to the facts, which are as follows : Curotto

died in 1871, and his widow administered. Her letters were revoked in 1872, and Gambs, public administrator, took charge of the estate. Demands against the estate were proved to the amount of $11,905.42. At the March term, 1872, Gambs presented a petition to the court for an order of sale of real estate, accompanying his petition with the lists required by the administration law. Rev. Stats., sect. 147. In his petition, he states that he had no money on hand; that he has paid out over $800 to take up interest-notes of the deceased, secured by real estate, in order to prevent a sale under the deed of trust. He prays for the sale of six pieces of land, being the realty described in the inventory; as to the first five of which tracts of land he says that they are encumbered by a deed of trust for $5,000, the sixth piece being encumbered by a deed of trust for $466.66. The court ordered the sale of the real estate described in the petition. Tract 1 was appraised at $1,000, and sold to Giovanni Brignoli for $1,075; tract No. 2 was appraised at $6,000, and sold to John F. O'Brien for $4,500; tract No. 3 was appraised at $150, and sold to G. B. Andreveno for $220; tract No. 4 was appraised at $400, and sold to John F. O'Brien for $500; tract No. 5 was appraised at $250, and sold to August Cella for $181. These tracts were embraced in the $5,000 deed of trust. Tract No. 6 was appraised at $12.50 per foot, and sold for $200. The sale was approved by the court except as to the last tract, and deeds for the five tracts covered by the $5,000 deed of trust were executed by the administrator on September 11, 1872. Afterwards, at the March term, 1872, Gambs made his first annual settlement with the Probate Court as administrator of Curotto. In this settlement the administrator charges himself, amongst other things, with the money received for the proceeds of the real estate, and takes credit for the notes, principal and interest, secured by the deed of trust on the tracts sold. The deed of the trust was satisfied in the recorder's office on Sep-

tember 2, 1872, by the trustee, as holder of the notes. It is this payment which plaintiff, in his petition, claims to have been a waste of the estate, and which, as administrator, succeeding Gambs, he seeks to recover from the sureties of Gambs in this action. The settlement of Gambs showed a balance of $578.74 due the estate. Gambs made a second annual settlement at the June term, 1874, showing a balance due the estate of $570.39. Gambs then resigned as administrator, and plaintiff in this suit, who succeeded him as public administrator, took charge of the estate on December 11, 1874.

It is manifest that what was appraised here was the value of the real estate, and not merely the value of the equity of redemption. What was sold was the real estate ; and as the fact of the existence of the deed of trust was known to the administrator and to the Probate Court, and nothing is said in the order, the advertisement, or the deed, as to a sale subject to this deed of trust, the sale must have been ordered, made, and approved with the understanding that the deed of trust should be discharged from the proceeds of the purchase-money. This was done, and the deed of trust satisfied ; and the settlement, showing that this was done, was submitted to the Probate Court and scrutinized by it, and passed by the court as a correct statement of the transaction. The proceeding had the sanction of the Probate Court. It might have been more regular to proceed to sell the equity of redemption, under sect. 144. Gen. Stats. 1865, sect. 8. But it does not appear that there was any waste. There was no payment of a demand without allowance, which ought not to be satisfied without being proved. The holders of these notes might have foreclosed the deed of trust and made their money by the sale of the real estate by which they were secured, without any application to the court or proof of their claims.

The statute provides (sects. 143, 144) that when any

person dies owning an equity of redemption, the Probate Court may order the administrator to redeem the property out of the personalty, or by the sale of other real estate, or may order the equity of redemption to be sold. In the present case, no reference was made to the mortgage in the order of sale, advertisement, deed of the administrator, nor in the appraisement. It is evident that the land itself was appraised, and that, under the direction of the Probate Court, the land itself was offered for sale, and that the purchaser bid, not for the equity of redemption, but for the land. That the court and the administrator knew of the existence of the mortgage is evident; and it is not likely that the purchasers were ignorant of it, or that there was any attempt or intention to deceive bidders into the belief that the deceased, at the time of his death, had any other interest in the premises sold than that declared in the application for an order of sale. Had the bidders offered merely for the equity of redemption, it is evident that the amount bid would have been out of all proportion to the appraisement. It is perhaps for this reason that the purchasers — who may, possibly, have been the owners of the notes secured upon the land — seem to have bid for the land irrespective of the deed of trust, and to have paid the difference between the value of the land and the debt secured upon it. The matter appears to have been arranged by an immediate satisfaction of the mortgage; and the administrator was allowed by the court, under whose superintendence he acted, to charge himself for the whole amount of each bid, and to take credit in his next settlement for the amount of the mortgage extinguished. Whether he actually received these sums as charged against him in his account, seems immaterial. In good conscience, only the difference between the bid and the mortgage was received for the estate, or ought to be regarded as assets of the estate. The amount due upon the land, secured by the mortgage set forth in the application for an order of sale, was really received from the

bidders to be applied by the administrator for them to the discharge of the mortgage.

That the administrator could only sell the interest of the deceased in the land, and that, having sold this interest, he had, as administrator, no further concern with the mortgage, is true. But this does not dispose of the question. It does not follow from this that the discharge of the administrator was such an act of negligence and wrong administration as to make the administrator liable out of his own pocket, and to give an action against the sureties on his bond. It is not pretended that there has been any spending or converting to his own use by the administrator of the assets of the estate. The nature of the transaction cannot be misunderstood. The effect to the creditors and distributees of the estate is as if the equity of redemption, which alone was salable, had been regularly advertised and sold.

The administrator acted throughout under the direction of the Probate Court, and with its approbation ; and it does not appear that the estate has been prejudiced by his action. To make his sureties pay the amount laid out by the administrator for the satisfaction of the mortgage, would be to make them pay to the estate what does not appear to have been received for the estate by their principal, or lost to the estate by any act or omission of his. Whilst care must be taken to guard against an abuse of trust on the part of administrators, the courts are liberal where they acted in good faith, and, so acting, have been guilty of merely technical errors. The administrator and his sureties ought not to be held for a *devastavit* except on solid grounds.

The evidence, we conceive, did not make out a case of loss to the estate by the malconduct of the administrator. We are of opinion that the finding and judgment was for the right party, and should be affirmed. It is so ordered. All the judges concur.